UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL COUNCIL OF THE UNITED STATES, SOCIETY OF ST. VINCENT DE PAUL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE DEL NORTE COUNCIL OF THE SOCIETY OF ST. VINCENT DE PAUL,<br><br>Defendant. | Case No. 23-cv-01556-RS<br><br>**ORDER AWARDING ATTORNEY'S FEES** |

## I. INTRODUCTION

Plaintiff National Council of the United States, Society of St. Vincent de Paul ("National Council") obtained default judgment in its favor in this trademark infringement action against Defendant Del Norte Council of the Society of St. Vincent de Paul ("Del Norte Council"). Pursuant to the Lanham Act's fee-shifting provision, 15 U.S.C. § 1117(a), and the Court's order on August 23, 2024, National Council now moves to recover attorney fees and costs in the amount of $128,299.25 incurred in this action. For the reasons set forth below, Plaintiff is awarded $117,989.03 in attorney's fees (representing a 10% reduction in UB Greensfelder's lodestar) and $407.00 in costs, totaling $118,396.00.

## II. LEGAL STANDARD

Courts determine reasonable attorney fees according to the lodestar analysis, which multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees bears the initial burden of

establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of money spent. *Hensley*, 461 U.S. at 434; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). The requesting party also has the burden to demonstrate that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Generally, "the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal citations omitted).

Typically, fees calculated under the lodestar method are presumed to be reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208-09 (9th Cir. 2013). However, the court has the discretion to adjust this figure "if circumstances warrant" it, and "should…exclude from the lodestar fee calculation any hours that were not 'reasonably expended,' such as hours that are excessive, redundant, or otherwise unnecessary." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *Rodriguez v, Barrita, Inc.*, 53 F.Supp.3d 1268, 1281 (N.D. Cal. 2004) (quoting *Hensley*, 461 U.S. at 433-34). Additionally, the court may "impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### III. DISCUSSION

When a party requests an award of attorney fees after prevailing on default judgment, the lack of a party to "challenge an application for attorney's fees and costs does not mean that a court should rubber-stamp the request." *Cognizant Technology Solutions U.S. Corporation v. McAfee*, No. 14-cv-01146-WHO, 2014 WL 3885868, at *2 (N.D. Cal. Aug. 7, 2014). Rather, the principle of procedural fairness counsels a court to scrutinize such a request more closely. *See id.*

#### A. UB Greensfelder's Lodestar

UB Greensfelder seeks an award of $99,032.25 for expending 171.80 hours of work on this matter. As an initial matter, there is no issue with the reasonableness of UB Greensfelder's rates during the relevant time period. Here, most of the work in this matter was performed by partner John Petite, whose rates were $515.00, $545.00, and $570.000 in 2022, 2023, and 2024

respectively. Petite was assisted by a paralegal, Mary Illig, whose hourly rate during the relevant time period was $269.50. Counsel submitted declarations showing the rates charged are well below the prevailing market rates in the Northern District of California. Taking into account the experience of the attorney and paralegal working on this matter, UB Greensfelder's rates present no cause for concern. Although the quality of the work performed and the success achieved is not at issue, insufficient billing descriptions and unreasonable billing amounts in UB Greensfelder's request independently warrant a slight downward adjustment.

While counsel "is not required to record in great detail how each minute of his time was expended," a fee request must contain "sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley*, 461 U.S. at 437 n.12; *United Steelworkers of Am. V. Ret. Income Plan for Hourly Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (internal quotation omitted). Here, the billing sheet, Exhibit A, contains numerous instances of "block billing," or lumping multiple discrete tasks in a single time entry. *See, e.g.*, *Darling Int'l, Inc. v. Baywood Partners, Inc.*, No. C-05-3758 EMC, 2007 WL 4532233, at *9 (N.D. Cal. Dec. 19, 2007). Where block billed entries make it difficult or impossible for a court to evaluate the reasonableness of the time spent, an attorney who engages in such practices has failed to carry his burden to prove his fees are reasonable. *Welch*, 480 F.3d at 948; *see also Banas v. Volcano Corporation*, 47 F.Supp.3d 957, 966-67 (N.D. Cal. 2014).

For example, on July 11, 2024, and July 16, 2024, paralegal Mary Illig billed a total of 1.5 hours at a rate of $404.25 for the purpose of drafting and filing an application for the *pro hac vice* admission of partner John Petite. Separately, Petite, in four separate entries from July 10, 2024, to July 17, 2024, billed a total of 6.6 hours at a rate of $4138.20 to various matters including "work on pro hac vice application." Because these entries contained narratives for wholly unrelated tasks like "draft and revise reply brief," it is impossible to determine how much time Petite expended on the *pro hac vice* application. *Pro hac vice* applications in the Northern District of California are essentially one-page forms requesting nothing more than the attorney's name, the client's name,

ORDER AWARDING ATTORNEY'S FEES
CASE NO. 23-cv-01556-RS

3

the attorney's bar membership, local counsel's name, and the address, phone number, and email address of the attorney and local counsel. It is unlikely it took 1.5 hours to complete such a task, raising concerns about the reasonableness of the hours recorded. This concern is compounded by Petite's block billing, which further obscures the amount of time UB Greensfelder spent on the *pro hac vice* application.

While the unreasonable hours expended on the *pro hac vice* application might normally require only a downward adjustment limited to the hours expended on the application itself, Petite's block billing is replete throughout UB Greensfelder's billing sheet, making it difficult to determine whether the time expended for any one task was reasonable. For example, on June 18, 2024, Petite billed 6.2 hours to:

> Draft and revise response to Nunn's motion to intervene; research re: same; receive and review order granting additional time to file same; draft and revise motion for default judgment; e-mail correspondence with local counsel re: reasons for Del Norte's administrative suspension.

Similarly, on June 25, 2024, Petite billed 4.9 hours to:

> Draft, revise, and finalize motion for default judgment, supporting memorandum, and supporting declaration; select and compile exhibits; draft and revise proposed order; e-mail correspondence with local counsel re revisions to same; draft, revise, and finalize response/opposition to Nunn's motion to intervene; research re: amicus issues; e-mail correspondence with D. Barringer and J. Hallissy re: fillings.

Petite's failure to specify how much time was spent on each distinct task impedes any determination of reasonableness for individual tasks. Nor is it possible to determine whether the total amount of time spent on all the tasks, in combination, was reasonable, because most of the tasks were also performed on additional days, across multiple months. Based on a close review of the billing entries, it is estimated at least 75% of UB Greensfelder's time was block billed. Accordingly, UB Greensfelder has failed to carry the burden of proving the reasonableness of their requested award. In light of the foregoing, an across-the-board reduction of UB Greensfelder's bill by 10 percent, from $99,032.25 to $89,129.03, is proper. *See Moreno*, 534 F.3d at 1112; *see also Welch*, 480 F.3d at 948.

**B. Procopio Firm's Lodestar**

The Procopio firm seeks an award of $28,860.00 for expending 44.4 hours of work on this

matter. Here, the work in this case was performed by partners Melinda Morton and Victor Felix, both of whom billed at the same $650 per hour rate. Considering the declarations submitted by counsel, the rates charged are reasonable and below the relevant market rates in the Northern District of California. On close examination of the Procopio firm's billing sheet, the billing descriptions sufficiently detailed to allow for a fair evaluation of the time expended and the reasonable fees to be allowed. Accordingly, an award of $28,860.00 is reasonable in light of the nature and extent of the services performed. Finally, the Procopio firm has shown an entitlement to costs in the amount of $407.00.

### IV. CONCLUSION

National Council's counsel, by all appearances, performed quality work in this case and achieved the desired result for their client. The rates charged are justified by counsel's education, experience, and the quality of the work performed. Counsel is also entitled to their reasonable fees and costs. However, there exists an independent duty to ensure that all fee requests are sufficiently justified, especially in the absence of an adverse party to challenge the reasonableness of the fee request. Because UB Greensfelder has not shown sufficient justification for their request, Plaintiff's motion for attorney fees is granted in part and denied in part. Del Norte Council shall pay National Council $117,989.03 in fees and $407.00 in costs, totaling $118,396.00.

**IT IS SO ORDERED**.

Dated: January 31, 2025

RICHARD SEEBORG
Chief United States District Judge